

ORDERED in the Southern District of Florida on February 4, 2026.

Robert A. Mark, Judge
United States Bankruptcy Court

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| In re: | Case No. 25-15370-RAM |
| FREEMAN KELLEY, JR. | Chapter 13 |
| Debtor. | |
| _____/ | |

## ORDER ON AUTOMATIC STAY MOTIONS

In most cases, the automatic stay does not apply to foreclosure actions or other *in rem* proceedings against property in which the debtor does not hold legal title. However, under the unusual facts of this case, the Court concludes that the automatic stay did apply to a tax sale of a home long occupied by the debtor in which he has a colorable claim to establish title but is not presently the owner of record.

### Factual and Procedural Background

The Court conducted a hearing on December 11, 2025 on an Emergency Motion for Entry of an Order Confirming No Stay is in Effect as of Debtor's Petition Date, May 14, 2025 or Alternatively, Motion to Annul the Automatic Stay Nunc Pro Tunc to Petition Date and for

1

Ratification of the Tax Deed Sale [DE# 39] (the "Stay Relief Motion") filed by Rusol & Co., Inc. ("Rusol") and on the Debtor's Motion to Enforce the Automatic Stay and to Declare Tax Deed Sale and Tax Deed Void [DE# 43] (the "Motion to Enforce Stay") filed by Freeman Kelley, Jr. (the "Debtor").  For the following reasons, the Court is denying the Stay Relief Motion and granting the Motion to Enforce Stay.

The Debtor lives in a home located at 2401 NW 162nd Street, Opa Locka, Florida (the "Home").  He has lived in the Home since 1997.  The Debtor is the son of Freeman Kelley, Sr. ("Kelley Senior").  Kelley Senior inherited, or believed he inherited, the Home in early 1993 pursuant to a will executed by the prior co-owner of the Home, Marion Butts.[1]  A copy of the will is attached as an exhibit to the Motion to Enforce Stay [DE# 43, pgs. 15-18]. The Debtor claims ownership pursuant to a quitclaim deed executed by his father, Kelley Senior, on August 20, 2024, conveying the Home to him.  A copy of the quitclaim deed is attached as an exhibit to the Motion to Enforce Stay [DE# 43, pgs. 24-25].

Unfortunately, although the will of Marion Butts, who died in 1993, devised the Home to Kelley Senior, Marion Butts' probate proceeding was dismissed.  No deed or other document was entered conveying the Home to Kelley Senior and the Home is still titled in the public records in the names of Marion Butts and Gladys Butts, both of whom died over 32 years ago.

Fast-forwarding to more recent times, the Debtor filed his petition commencing this chapter 13 case on May 14, 2025 (the "Petition Date").  Prior to the Petition Date, on June 1, 2022, a tax certificate was issued to Assembly Tax 36 LLC ("Assembly").  Assembly's tax certificate was not paid or redeemed by the Debtor and, on March 17, 2025, the Clerk of the

---

[1] The original co-owners of the Home were Marion Butts and his wife, Gladys Butts, who died in 1992, prior to the death of Marion Butts in early 1993.  Gladys Butts died intestate and her only heir was her husband, Marion Butts.

2

Court for Miami-Dade County issued a Notice of Application for Tax Deed that scheduled a tax sale for May 15, 2025 (the "Tax Sale").  A copy of the Notice, which was recorded on March 18, 2025, is attached as an exhibit to the Stay Relief Motion [DE# 39, pg. 15].

Although the Tax Sale was noticed, including by publication notice, for May 15th, the sale did not take place until August 7, 2025 for reasons not disclosed on this record. Perhaps it was continued, although not cancelled, because the Debtor's counsel provided notice of the bankruptcy filing to the Office of the Tax Collector by email on the Petition Date (*i.e.*, May 14, 2025), and notice was confirmed by an email from the Office of the Tax Collector that same day.  A copy of the emails is attached as an exhibit to the Motion to Enforce Stay [DE# 43, pg. 10].

The Debtor received notice of the originally scheduled May 15th sale date, *see* Certificate of Mailing attached to the Stay Relief Motion [DE# 39, pg. 20], but it is not clear from the record whether the Debtor or his counsel received notice of the sale when it was rescheduled for August 7th.  The Debtor did not file an objection to the sale or a suggestion of bankruptcy.  Rusol was the successful bidder at the Tax Sale with a bid of $201,000.  On August 8, 2025, the clerk issued a Tax Deed to Rusol, which was recorded on August 12, 2025.  The Tax Deed is attached as Exhibit F to the Stay Relief Motion [DE# 39, pg.18].

On August 21, 2025, following the issuance and recording of the Tax Deed, Rusol commenced a lawsuit styled *Rusol v. The Unknown Heirs of Marion Butts et al.*, Case No. 2025-016382-CA-01, pending in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Quiet Title Action").  In the Quiet Title Action, Rusol seeks to quiet title and to recover possession of the Home.  The Debtor is named as a defendant in the Quiet Title Action.  Although the Debtor had already commenced this bankruptcy case when Rusol commenced the Quiet Title Action, Rusol asserts that it was unaware of this

bankruptcy case until the Debtor filed a Notice of Stay in the Quiet Title Action on September 22, 2025.

In the Stay Relief Motion, Rusol seeks an Order finding that the Tax Sale conducted on August 7th and the Tax Deed issued on August 8th were not subject to the automatic stay because the Debtor is not the owner of record of the Home.  Alternatively, Rusol seeks an Order annulling the stay and ratifying the post-petition Tax Sale and issuance of the Tax Deed.

In the Motion to Enforce Stay, the Debtor argues that he has colorable title to the Home.  He argues that when Gladys Butts died intestate, title to the Home passed to her husband, Marion Butts, that when Marion Butts died, title passed to Kelley Senior under Marion Butts' will, and that title passed to the Debtor when his father, Kelley Senior, quitclaimed the Home to him in August 2024.  At the December 11th hearing, the Debtor's counsel also argued that the Debtor could seek title through adverse possession.[2]  The Debtor seeks an Order enforcing the automatic stay and declaring the Tax Sale and the entry and recording of the Tax Deed void.

## Discussion

Although the Debtor is not the record title owner of the Home, Florida law provides that rights to devised or intestate property vest at death.  *See* Fla. Stat. § 732.514 ("The death of the testator is the event that vests the right to devises unless the testator in the will has provided that some other event must happen before a devise vests."); *see also* Fla. Stat. § 732.101(2) ("The decedent's death is the event that vests the heirs' right to the

---

[2] On June 19, 2025, the Debtor filed the Adversary Proceeding Quieting Title by Adverse Possession Under Color of Title [DE# 1 in Adv. Proc. No. 25-01196-RAM (the "Adversary Proceeding").  However, the Adversary Proceeding was dismissed on August 8, 2025 for failure to serve the complaint and to appear at the scheduling conference. See Order Dismissing Proceeding [DE# 4 in the Adversary Proceeding].

4

decedent's intestate property."). The Court is not finding that this statutory provision means that Kelley Senior obtained legal title to the Home without completion of the probate proceeding but it does support the Debtor's position. On this record, despite a messy chain of title, the Debtor has at least equitable rights in the Home and viable claims to establish legal title through the asserted chain of inheritance and the August 20, 2024 quitclaim deed from Kelley Senior.

That colorable equitable interest, together with the Debtor's claims to establish legal title by way of a quiet title action or an action for adverse possession, constitute "legal or equitable interests" that became property of the Debtor's estate on the Petition Date. 11 U.S.C. § 541(a)(1); *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983) (citing House and Senate Reports on section 541(a)(1) to conclude that its scope is broad, including causes of action); *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) ("Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, both tangible and intangible, vest in the bankruptcy estate upon the filing of a bankruptcy petition."). While state law determines the existence and scope of the Debtor's interests, the Bankruptcy Code brings those interests, however limited, into the estate. Accordingly, as of the Petition Date, section 362(a)(1), (a)(3), (a)(4), and (a)(5) of the Bankruptcy Code stayed acts and proceedings to obtain possession of, exercise control over, or enforce liens against property of the estate. The fact that Florida's tax deed process is *in rem* does not remove it from the reach of section 362 where, as here, the estate holds a cognizable interest that the post-petition tax deed process would extinguish or impair.

Because the automatic stay applied, the Tax Sale, the issuance and recording of the Tax Deed, and the post-petition commencement and prosecution of the Quiet Title Action were actions taken in violation of the stay. In the Eleventh Circuit, such actions are "void

5

and without effect." *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982) (citing *Kalb v. Feuerstein*, 308 U.S. 433 (1940) and other circuit court decisions). This result is consistent with Florida bankruptcy and state-court authority addressing tax deed sales conducted post-petition. *See Venn v. Bazzell (In re Lambert)*, 273 B.R. 663, 666-68 (Bankr. N.D. Fla. 2002) (treating tax certificates as liens and holding a post-petition tax deed sale violates section 362); *Carter v. R.R. & Indus. Fed. Credit Union*, 675 So. 2d 685, 686 (Fla. 2d DCA 1996) (endorsing the principal that a tax deed issued in violation of the automatic stay is void).

The Court need not adjudicate, at this time, title to the Home to find that the automatic stay applies. It is sufficient that the Debtor has asserted a non-frivolous, colorable estate interest in the Home that would be determined or extinguished by the issuance and recording of the Tax Deed and the prosecution of the Quiet Title Action.

Rusol alternatively requests that the Court annul the automatic stay retroactive to the Petition Date, thereby validating the Tax Sale and the issuance and recording of the Tax Deed. On annulling the stay, the Eleventh Circuit has stated:

> It is true that acts taken in violation of the automatic stay are generally deemed void and without effect. Nonetheless, § 362(d) expressly grants bankruptcy courts the option, in fashioning appropriate relief, of "annulling" the automatic stay, in addition to merely 'terminating' it. The word 'annulling' in this provision evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to 'terminating,' would be superfluous.
> . . .
> Accordingly, we hold that § 362(d) permits bankruptcy courts, in appropriately limited circumstances, to grant retroactive relief from the automatic stay.

*In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984) (internal citations omitted).

"It is well recognized that a determination of whether to grant relief from stay retroactively is within the wide latitude of the Court with each decision being considered on a case-by-case basis." *In re Stockwell*, 262 B.R. 275, 280 (Bankr. D. Vt. 2001). "It is also

6

well-established that a Motion to Annul the Stay should be granted only where the creditor can show the existence of compelling circumstances." *In re Barr*, 318 B.R. 592, 598 (Bankr. M.D. Fla. 2004).  "The automatic stay should only be annulled to give effect to actions taken in violation of the stay in limited circumstances." *In re Stockwell*, 262 B.R. at 280.

In determining whether circumstances are sufficiently compelling to warrant retroactive annulment of the stay, courts consider:

> (1) whether the creditor had actual or constructive knowledge of the bankruptcy filing, (2) whether the debtor acted in bad faith, (3) whether grounds would have existed for modification of the stay if a motion had been filed before the violation, (4) whether the denial of retroactive relief would result in unnecessary expense to the creditor, and (5) whether the creditor has detrimentally changed its position on the basis of the action taken.

*In re Barr*, 318 B.R. 592, 598 (citing *In re Stockwell*, 262 B.R. at 281).  "Of the factors listed, the debtor's actions and lack of good faith are important in evaluating whether retroactive relief is warranted." *Id*. (citations omitted).

Here, the facts do not present compelling circumstances establishing cause to annul the stay.  Rusol proceeded with the Tax Sale without notice of the bankruptcy filing, and the Debtor failed to appear and object to the Tax Sale.  Nevertheless, the Court finds that the Debtor's failure to object to the Tax Sale and failure to provide notice of his bankruptcy filing to Rusol were not done in bad faith.  The Debtor filed this case to stop the Tax Sale, as attested in his Affidavit attached as an exhibit to the Motion to Enforce Stay [DE# 43, pgs. 26-27].  The Court recognizes that Rusol will have incurred expenses as a result of the Court enforcing the stay and denying retroactive relief.  However, as provided later in this Order, the Court is requiring the Debtor to reimburse Rusol for costs and fees incurred through the date it received notice of the bankruptcy case, and any fees or costs assessed against Rusol by Miami-Dade County when the Tax Sale is vacated.  As a result, Rusol should suffer only a limited financial loss.

By contrast, annulling the stay and validating the Tax Sale will greatly prejudice the Debtor. He has lived in the Home for nearly 30 years and either he or his father, Kelley Senior, paid the property taxes for nearly 25 years, when he failed to pay the 2021 taxes and Assembly purchased the tax certificate subject of the Tax Sale. The Home is apparently worth over $200,000 based on Rusol's bid at the Tax Sale and there is no mortgage. The Assembly tax certificate is a lien on the Home, but the certificate amount is only $13,182.58 and payment of the claim under the certificate is included in the Debtor's First Amended Chapter 13 Plan [DE# 33].[3] If the Debtor is able to confirm his plan, he will be preserving the substantial equity in the Home, equity for the Debtor if he is successful in establishing his right to title. Losing his right to preserve the equity through the Tax Sale would be a substantial financial loss. In sum, the Court does not find compelling circumstances providing cause to annul the stay.

## Conclusion

Based upon the Court's findings and conclusions, the Stay Relief Motion is denied and the Motion to Enforce Stay is granted. Accordingly, the Court **ORDERS** as follows:

1. The Stay Relief Motion is denied.

2. The Motion to Enforce Stay is granted. The automatic stay applied to the Tax Sale, the issuance and recording of the Tax Deed, and the commencement and prosecution of the Quiet Title Action. Those post-petition actions are void and without effect. Specifically, the Tax Deed issued on August 8, 2025 to Rusol & Co., Inc. and recorded in the Official Record Book 34893, Page 1576, of the Public Records of Miami-Dade County, Florida is declared void ab initio and without effect.

---

[3] The Debtor will need to amend his plan to include interest to the certificate holder and to include the payment of any taxes that may be due for the years after 2021.

3. The Court requests the Office of the Tax Collector for Miami-Dade County and the Clerk of the Court for Miami-Dade County to take whatever actions are necessary to implement this Order, including vacating the Tax Sale, voiding the Tax Deed, and refunding Rusol the funds Rusol paid at the Tax Sale. The Court also requests that, to the extent possible, the Clerk waive any fees and costs that Miami-Dade County would otherwise be permitted to retain upon vacating the Tax Sale.

4. The Clerk of the Court for Miami-Dade County shall accept and record a certified copy of this Order in the Public Records of Miami-Dade County, Florida, without the requirement of documentary stamp tax or payment by the Debtor of any recording fee.

5. Upon the finality of this Order, Rusol is directed to dismiss the Quiet Title Action.

6. Rusol may file a claim in this bankruptcy case for reimbursement of fees and costs it incurred in connection with the Tax Sale and the Quiet Title Action up through the date that it received notice of this case. Once that claim is determined, after resolving any objection by the Debtor, the allowed amount of the claim must be paid directly by the Debtor or provided for in an amended chapter 13 plan.

7. Because the issues raised in the Stay Relief Motion and the Motion to Enforce Stay raised bona fide disputes of law, the Court will not consider a request by the Debtor or Rusol for attorneys' fees and costs incurred in connection with these motions.

8. The Debtor's counsel, Rolf M. Baghdady, Esq., is directed to furnish a copy of this Order to the Clerk of the Court of Miami-Dade County and to the Office of the Tax Collector for Miami-Dade County, and to file a certificate of service in this case.

###

Copies to:

Rolf M. Baghdady, Esq.
Sabrina Chassagne, Esq.
Nancy K. Neidich, Trustee